UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **ALVIN DIGGS** | **08-10020** |
| **CARLA P. DIGGS** | SECTION A |
| DEBTORS | CHAPTER 13 |
| **ALVIN DIGGS**<br>**CARLA P. DIGGS** | ADVERSARY NO.<br>**08-1057** |
| PLAINTIFFS | |
| VERSUS | |
| **GUARANTEE SERVICE TEAM OF PROFESSIONALS, INC.** | |
| DEFENDANT | |

## MEMORANDUM OPINION

On January 4, 2008, Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code.[1] On February 13, 2008, GSTOP filed proof of claim no. 3 in the unsecured amount of $69,373.51, which includes principal of $57,358.16; $3,815.35 in legal interest from the State Court petition date to the Bankruptcy Court petition date; and $8,200.00 in estimated legal fees. On March 11, 2008, Debtors filed an Objection to Claim 3 of GSTOP. GSTOP requested at a status conference that the Objection be converted to an adversary proceeding, after which time Debtors filed the instant Complaint.

On August 13, 2008, trial in the above-captioned adversary proceeding came before the Court for trial on the merits. At the conclusion of trial, the Court took the matter under advisement.

---

[1] Case no. 08-10020.

**I. Jurisdiction**

This Court has jurisdiction over the issues presented pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 502.

**II. Facts**

In February 21, 2006, a fire destroyed the home of Alvin and Carla Diggs ("Debtors") located at 2801 Britanica Street, Marrero, Louisiana. Debtors filed a claim with their insurance company, National Security Fire & Casualty Company ("National Security").

On March 13, 2006, Debtors contracted with Guarantee Service Team of Professionals ("GSTOP") to repair their home.[2]

On March 18, 2006, Carla Diggs signed an agreement which was handwritten by William Charles Folks President of GSTOP ("Mr. Folks")[3]:

> Guarantee agrees to make the repairs to Alvin Diggs house at 2801 Britanica, Marrero 70072 for the amount paid by the insurance co. including any supplements. Mr. and Mrs. Diggs agree to pick out items to go back in from within the budget Gruarantee gives them and from whatever place Guarantee takes them to pick them. This is because the Diggs are underinsured and can't pay the non-recoverable depreciation. [sic]
>
> Draw schedule
>     1/3 to start
>     1/3 after sheet rock goes up
>     1/3 at end of job.[4]

---

[2] GSTOP 2.

[3] In some exhibits and in some testimony, Mr. Folks was referred to by his nickname, "Chunky."

[4] GSTOP 5.

Neither the contract dated March 13, 2008, nor the handwritten agreement dated March 18, 2008 (collectively the "GSTOP Contract"), contain a completion date for the repairs.

Debtors' insurance adjustor, Chris Ashley of IAS Claim Services, Inc., inspected Debtors' home on March 7, 2006, and prepared a damage estimate of $80,513.02.[5]

GSTOP began the renovation of Debtors' home in May 2006.

National Security sent a check dated May 9, 2006, in the amount of $80,513.02 payable to the order of Alvin Diggs and Washington Mutual Bank ("Washington Mutual"), the bank holding the mortgage on Debtors' home. Debtors forwarded the check to Washington Mutual.

On or about June 4, 2006, GSTOP received a check from Washington Mutual in the amount of $26,837.67 which represented the first draw under the GSTOP Contract.

Debtors terminated GSTOP on November 7, 2006. As of that date, GSTOP had completed the gutting, roof repair, installation of insulation, sheet rock, rough in electrical and plumbing; and some trim carpentry.

On November 8, 2006, Mr. Folks sent a letter to the Jefferson Parish permit office advising that GSTOP was no longer performing work at Debtors' home and requesting that the permits issued in the name of GSTOP be voided.[6]

On November 14, 2006, Carla Diggs contracted with Marko Marin to complete the repairs to Debtors' home for $15,105.00.[7] Mr. Marin completed the repairs in February 2007 and was paid

---

[5] GSTOP 3. The estimate deducted depreciation from the actual cost to replace.

[6] GSTOP 10.

[7] Diggs 2.

the full contractual amount. In addition, Debtors paid Mr. Marin $3,980.00 to supply and install cabinets, $450.00 for counter-tops, $2,175.00 for attic insulation, and $250.00 for plumbing.

On December 14, 2006, Carla Diggs contracted with Carlos Icaza d.b.a. Cica Mechanical Contractors to install air conditioning ducts, return air, supply vents, and install a new three (3) ton outside air conditioning condenser for $3,261.00.[8]

Carla Diggs also paid $1,800.00 to Tran's Electrical to complete electrical work,[9] and incurred $4,874.38 in miscellaneous expenses.[10]

The Court takes judicial notice that on April 24, 2007, GSTOP filed suit against Debtors in the 24th Judicial District Court for the Parish of Jefferson.[11]

### III. Law and Analysis

Debtors allege that GSTOP breached the GSTOP Contract "by failing to substantially complete the work on their home in a timely, professional, and workmanlike manner."[12] The Court disagrees. The contract between Debtors and GSTOP contains no completion date. While the project was substantially delayed between June and October 2006, the Court finds that GSTOP worked diligently to secure qualified subcontractors and to perform the contract in a timely fashion. In 2006, owing to an unusually high demand for construction workers following Hurricane Katrina,

---

[8] Diggs 3.

[9] *Id.*

[10] Diggs 5.

[11] Case no. 644045.

[12] Pleading 3.

most homeowners experienced unusual delays in the repair of their homes due to shortages of supplies, subcontractors, and labor. These delays were beyond the control of any contractor, including GSTOP. As a result, the Court finds that GSTOP diligently performed as required by the contract.

Debtors also contend that GSTOP's work was unsatisfactory, but provided no evidence that the work performed was of poor quality. Therefore, Debtors' claims for damages due to breach of contract are denied.

In the alternative, Debtors allege that they had the right to cancel the contract with GSTOP pursuant to Louisiana Civil Code Article 2765, which provides:

> The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.

The Court agrees that Debtors had the right to cancel the contract, but Debtors must pay GSTOP "for the expense and labor incurred, and such damage as the nature of the case may require." The initial damage claim approved by National Security was $80,513.02.[13] In the GSTOP contract, GSTOP agreed to accept this sum in full payment for all work performed. As of November 6, 2006, GSTOP had not completed the renovation of Debtors' home. While the walls were sheetrocked and substantially painted, finish carpentry had not been completely installed or painted; the floors were not installed; kitchen and bath cabinets were absent; no appliances, air conditioning,

---

[13] Although GSTOP argued that it prepared a supplemental request for additional costs, it did not prove that the request was paid by National Security. GSTOP 4. Therefore, the total amount available to GSTOP on completion of the contract was $80,513.02.

heating, or water heaters were installed; one exterior window was missing; the bathrooms had not been gutted and restored; and finish lighting and hardware was missing.

Based on the draw schedule contained in the GSTOP Contract and the testimony and documentary evidence offered at trial, the Court concludes that the home was 66% complete at the time GSTOP was terminated.

Debtors contract with GSTOP provides that if Debtors terminate the contract prior to completion of repairs, Debtors are responsible for the following:

> (a) all unpaid sums owing to [GSTOP] for work completed or material ordered, and
> (b) 10% of the amount of work not completed, as liquidated damages to reimburse [GSTOP] for mobilization costs.[14]

Although GSTOP allegedly incurred expenses of $82,439.81[15] to repair Debtors' home, it is clear that those expenses exceeded the amount GSTOP agreed to accept for the work performed. Under cross examination, GSTOP's representative admitted that items included in its enumerated costs had not been performed or material had been returned. The Court finds that because GSTOP completed two-thirds of the work, it is entitled to 66% of the $80,513.02 contract price or $53,138.59. After applying a credit of $26,837.67 for funds already received by GSTOP from Debtors, Debtors owe GSTOP $26,837.67.

In addition, GSTOP is entitled to 10% of the one-third of the work not completed, $2,683.77.

GSTOP's proof of claim includes attorneys' fees and costs of $8,200.00. At trial Mr. Folks testified that GSTOP hired counsel to file suit in state court, defend the objection to GSTOP's proof of claim and this adversary complaint. However, GSTOP provided no proof of the amount of

---

[14] GSTOP 2.

[15] GSTOP 12.

attorneys' fees and costs it had incurred. Therefore, the Court finds $5,000.00 in attorneys' fees and costs to be reasonable based on the amount of the allowed claim.

### IV. Conclusion

The Court finds that GSTOP did not breach the GSTOP Contract. Debtors terminated the GSTOP Contract prior to completion of repairs. Pursuant to Louisiana Civil Code Article 2765, GSTOP has a claim against Debtors' for labor and expenses incurred prior to contract termination. The Court finds that GSTOP has an unsecured claim in the amount of $34,521.44,[16] plus interest at the state rate from the date of filing the state court petition, April 24, 2007, until the date Debtors' filed their bankruptcy petition, January 4, 2008.[17] The Court will enter a Judgment in accordance with this Memorandum Opinion.

New Orleans, Louisiana, September 18, 2008.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[16] Labor and expenses incurred prior to termination ($26,837.67), plus 10% liquidated damages ($2,683.77), plus attorneys' fees and costs ($5,000.00).

[17] Under Louisiana law, GSTOP is entitled to prejudgment interest. La. R.S. 9:3500; *St. Tammany Manor, Inc. v. Spartan Building Corp.*, 509 So.2d 424 (La. 1987). Federal court cases that are based on state law, such as the one before this Court, are controlled by state rights to judicial interest. *Travelers Insurance Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203 (5th Cir. 1993). On the petition date, interest ceases to accrue on an unsecured claim. *In re United States Lines, Inc.*, 199 B.R. 476, 481 (Bankr.S.D.N.Y. 1996). Interest accruing prepetition is not "unmatured" just because it is "unliquidated." *Id.* at 482; 11 U.S.C. § 502(b)(2).